**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| _____ ) | |
| Ning Shen ) | |
| 146 Tather Drive ) | |
| Martinsburg, WV 25405 ) | |
| ) | Case No. 3:16-CV-1 (Groh) |
| Plaintiff, ) | Electronically filed: 01/04/2016 |
| ) | |
| vs. ) | |
| ) | COMPLAINT AND |
| ) | JURY DEMAND |
| Robert A. MacDonald ) | |
| Secretary, ) | |
| United States Department of Veterans Affairs, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## COMPLAINT

Plaintiff, Dr. Ning Shen ("Dr. Shen"), brings this complaint in the United States District Court for the Northern District of West Virginia against the U.S. Department of Veterans Affairs, an agency of the U.S. federal government ("Defendant"), alleging as follows:

## NATURE OF THE CASE

1.     Dr. Shen brings her action against Defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Dr. Shen alleges that Defendant wrongfully terminated her employment and took other adverse actions against her because she participated in the Equal Employment Opportunity ("EEO") process and opposed unlawful discrimination.

2.     Dr. Shen was Defendant's employee from February 2008 to September 11, 2014. For the duration of her employment, Dr. Shen worked at the Veterans Affairs Medical Center in Martinsburg, VA.

3.      Soon after Dr. Shen became Defendant's employee, her supervisor began to harass her, putting an unbearable workload on Dr. Shen and ridiculing her English language skills. Dr. Shen tried to resolve the issues internally, but the medical center's management ignored her.

4.      The medical center's management stopped ignoring Dr. Shen in August 2009, when she first initiated the EEO process. Beginning in February 2010 and ending with Dr. Shen's termination in September 11, 2014, the medical center's chief of staff, Jonathan Fierer ("Fierer"), led at least a half-dozen attempts to terminate Dr. Shen's employment.

5.      The harassment and retaliation was so blatant that this Court enjoined Fierer and the rest of the medical center's management from terminating Dr. Shen's employment until the resolution of her discrimination complaint.

6.      On April 17, 2013, Dr. Shen settled her complaint, which led to her reassignment to a C&P Physician Reviewer position in Defendant's Compensation & Pension Department.

7.      However, after Defendant reassigned Dr. Shen pursuant to the settlement agreement, it omitted Dr. Shen from the organizational chart, failed to assign her a direct supervisor, failed to issue her a position description, failed to issue her a functional statement for six months, and failed to give Dr. Shen more than two hours of work per day on average.

8.      Despite a backlog of more than 60,000 claims from U.S. veterans, the medical center's management alleged that there simply was not enough administrative work to give Dr. Shen more than two hours of work per day. Dr. Shen's light workload made her the subject of gossip and derision in the office.

9.      This treatment culminated on June 12, 2014, when Defendant proposed to terminate Dr. Shen just two days after the U.S. Equal Employment Opportunity Commission ("EEOC")

2

stopped monitoring Defendant for compliance in connection with Dr. Shen's discrimination complaint and settlement. The proposed termination was issued at Fierer's urging and approval.

10.     The proposal charged Dr. Shen with performing "ACE exams" and therefore improperly practicing medicine at the medical center. However, ACE exams don't exist, the duties Dr. Shen performed were at the explicit direction of her supervisory chain, Dr. Shen was never told that she was doing anything wrong until she was terminated for it, nothing Dr. Shen did affected patient care, and everything Dr. Shen did was independently reviewed and signed off on by a physician authorized to practice medicine at the medical center. Defendant tried to characterize the termination in such a way that it could report it to a national database for adverse actions against physicians, thereby further harming Dr. Shen's career.

11.     Dr. Shen filed a new discrimination complaint, and Defendant offered to mitigate the termination decision if Dr. Shen withdrew her complaint. When Dr. Shen refused, Defendant terminated her employment.

12.     Dr. Shen's sole professional desire for the past eight years has been to serve this country's veterans. Despite her dedication, the medical center's management has relentlessly pursued the destruction of Dr. Shen's career simply because she would not silently accept mistreatment.

## JURISDICTION AND VENUE

13.     Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII")).

14.     This Court has jurisdiction to hear this action under 42 U.S.C. § 2000e-16(c), (d) and 42 U.S.C. § 2000e-5(f)(3).

9.     Venue is appropriate in this judicial district under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice occurred in this district, and Dr. Shen would have worked in this district but for the unlawful employment practice.

## PARTIES

10.    Dr. Shen is a citizen of the United States and resides in Martinsburg, West Virginia.

11.    Defendant is an agency of the federal government.  Defendant's headquarters are at 810 Vermont Avenue, NW, Washington D.C. 20420. The VAMC is located at 510 Butler Avenue, Martinsburg, West Virginia 25405.

## ADMINISTRATIVE EXHAUSTION

12.    Dr. Shen administratively exhausted her remedies. As set forth fully herein, Dr. Shen timely raised the employment actions challenged herein within 45 days of when she learned of the adverse actions. Dr. Shen timely filed her formal EEO complaint with Defendant raising the employment actions challenged herein with 15 days of receiving a notice of right to file formal complaint from Defendant. Defendant accepted for investigation and in fact investigated all the adverse actions challenged herein. More than 180 days have elapsed since Dr. Shen initially filed her complaint with Defendant and the EEOC. No final action has been taken on Dr. Shen's complaint.

## FACTUAL ALLEGATIONS RELATED TO ALL CLAIMS

**Background of Dr. Shen' Employment With Defendant**

13.    The VAMC hired Dr. Shen as a contract pathologist in July 2007.

14.    On February 4, 2008, after observing Dr. Shen's competency and conduct, the VAMC decided to hire Dr. Shen as a full-time staff pathologist.

**Dr. Shen First Participates in the EEO Process**

15.     In or about August 2009, Dr. Shen initiated the EEO process alleging that her then first-line supervisor, Vijayaleela Victor, had harassed and discriminated against Dr. Shen in violation of Title VII. Dr. Shen prosecuted this claim until April 2013 through Defendant's EEO process, the EEOC's administrative hearing process, and federal court.

16.     From February 2010 to March 2011, the VAMC held multiple meetings related to the termination of Dr. Shen's employment. The hearings addressed issues already investigated and resolved previously by Defendant.

17.     In February 2010, Defendant placed Dr. Shen on summary suspension allegedly due to concerns about her competence and clinical judgment.

18.     Dr. Shen amended her EEO complaint to include proposed terminations, Dr. Shen's summary suspension, and other adverse actions. Dr. Shen also amended her complaint to include retaliation in addition to discrimination.

19.     Dr. Shen's amended EEO complaint identified Fierer as a management official responsible for some of the discriminatory and retaliatory acts. Dr. Shen's representative deposed Fierer during the discovery phase of the hearing process.

20.     Defendant's policy at the time stated that a summary suspension could be resolved either by exonerating the practitioner and returning privileges to an active status, or finding there is sufficient evidence of improper professional conduct or incompetence to warrant proceeding with a reduction or revocation process.

21.     In December 2010, Defendant reinstated Dr. Shen from summary suspension to active duty.

22.     On March 29, 2011, the U.S. District Court for the Northern District of West Virginia found that Defendant's conduct was likely retaliatory and enjoined Defendant from terminating Dr. Shen's employment until the resolution of her complaint.

23.     While Dr. Shen's complaint was ongoing, the VAMC reassigned Dr. Victor to a non-supervisory position.

**The Parties Settle the Claim the Day it was set for an EEOC Administrative Hearing**

24.     Dr. Shen's case was scheduled for hearing before an EEOC administrative judge on April 17, 2013. However, the parties reached an agreement to settle the case before the hearing began.

25.     The settlement agreement provided that the Agency would reassign Dr. Shen from her pathologist position to a position as a "C&P Physician Reviewer" in the Compensation and Pension ("C&P") Department of the VAMC.

26.     The April 17, 2013, settlement agreement between Defendant and Dr. Shen provided that Dr. Shen's position of C&P Physician Reviewer granted Dr. Shen credentials as a physician at the VAMC. The agreement also provided that Dr. Shen would receive $1000 in education pay annually.

**Defendant Refuses to Assign Dr. Shen any Duties**

27.     On April 21, 2013, the Agency completed a reassignment action on form SF-50.

28.     In April 2013, Dr. Shen reported to the C&P Physician Reviewer position. When Dr. Shen reported to the C&P Physician Reviewer position, she had no first-line supervisor, no position description, and no functional statement.

29.     In or about April 2013 or May 2013, Acting Chief of Medical Service Dr. Ngozi Efobi ("Dr. Efobi") instructed Dr. Veronice Gardener ("Dr. Gardener") to train Dr. Shen to perform functions related to the review of requests the Veterans Benefits Administration ("VBA") made

to the VAMC's C&P Department on form 2507. Dr. Efobi instructed Dr. Gardener to train Dr. Shen to review the form 2507, assess what exams were needed, estimate the time to perform the exam, provide the information to the clerks who scheduled exams, and determine whether the VBA's request required testing or x-rays.

30.     The VBA requests the VAMC's C&P Department to provide medical assessments of veterans' medical conditions to be used in benefits determinations. Sometimes the VAMC already possesses acceptable clinical evidence to provide the requested assessment to the VBA. In cases where the VAMC already had acceptable clinical evidence, the C&P Department does not order any tests or examinations of the veteran.

31.     Dr. Gardener trained Dr. Shen consistent with Dr. Efobi's instructions.

32.     Dr. Shen's duties in reviewing form 2507 requests from the VBA on average took two hours per day to perform.

33.     Reviewing form 2507 requests from the VBA was the only duty the VAMC required Dr. Shen to perform while she occupied the position of C&P Physician Reviewer.

34.     On August 14, 2013, Dr. Shen received a functional organizational chart signed by VAMC Martinsburg management reflecting that Dr. Shen was not in the C&P Department and that Dr. Shen did not have a position within the medical service.

35.     On August 15, 2013, Dr. Shen received an e-mail indicating that Dr. Shen did not have credentials at the VAMC Martinsburg.

36.     On August 16, 2013, Dr. Shen spoke with Acting Chief of Medical Service Ngozi Efobi ("Dr. Efobi"). Dr. Efobi told Dr. Shen that she was not a doctor. Dr. Efobi refused to answer Dr. Shen's questions about her credentials.

37.     On August 22, 2013, Dr. Shen met with C&P Program Analyst Trudy Joiner ("Joiner"). Joiner told Dr. Shen that she was not in a clinical group, but rather that Dr. Shen was in an administrative/clerical group.

38.     Though Dr. Shen had only a few hours of work per day, the C&P Department continued to add physicians and administrative staff while Dr. Shen occupied the position of C&P Physician Reviewer.

39.     While she was a C&P Physician Reviewer, Dr. Shen inquired about the status of her credentials. The VAMC refused to cooperate with Dr. Shen in undergoing the credentialing process.

**Breach Allegation**

40.     On August 22, 2013, Dr. Shen filed a notice of breach with Defendant alleging that it had breached the April 17, 2013, settlement agreement. Dr. Shen's allegation of breach explicitly implicated Dr. Bennett in misconduct.

41.     On October 30, 2013, Defendant rejected Dr. Shen's breach allegation.

42.     On November 27, 2013, Dr. Shen filed an appeal with the EEOC alleging Defendant had violated the settlement agreement.

43.     On April 9, 2013, the EEOC ordered Defendant to issue Dr. Shen an SF-50 reflecting her C&P Physician Reviewer position and to modify its organizational chart to reflect Dr. Shen's position. The EEOC denied Dr. Shen other relief.

44.     On May 12, 2014, Dr. Shen filed a motion for reconsideration with the EEOC concerning her allegation that Defendant had breached its settlement agreement with Dr. Shen.

45.     By written notice dated June 10, 2014, the EEOC advised Dr. Shen and Defendant that it was ceasing monitoring the VA for compliance with its April 9, 2013, because enforcement activity was closed pending the resolution of Dr. Shen's motion for reconsideration.

**Dr. Shen Receives a Functional Statement**

46.     On September 19, 2013, Dr. Efobi scheduled a meeting with Dr. Shen to discuss her position description. The meeting was scheduled to take place on September 24, 2013.

47.     On September 20, 2013, the VAMC's EEO office provided its initial responses to Dr. Shen's notice of breach to the Agency. In lieu of providing Dr. Shen's position description, the response cited the September 24, 2013, meeting between Dr. Shen and Dr. Efobi. However, on September 23, 2013, the Agency cancelled the meeting between Dr. Shen and Dr. Efobi. The Agency subsequently re-scheduled and cancelled meetings to discuss Dr. Shen's functional statement an additional three times. Ultimately, Dr. Efobi never met with Dr. Shen.

48.     In September or October 2013, Dr. Barbara Bennett ("Dr. Bennett") replaced Dr. Efobi as the medical service chief. Dr. Bennett met with C&P group physicians. However, Dr. Bennett did not meet with Dr. Shen.

49.     On October 22, 2013, Dr. Bennett sent a draft functional statement and scheduled a meeting with Dr. Shen for the following morning. The functional statement pertained to a "registered clinician quality reviewer." The Agency had created the position for Dr. Shen.

50.     On October 23, 2013, Dr. Bennett met with Dr. Shen and president of the local chapter of the National Federation of Federal Employees, Janice Perry ("Perry"). During the meeting, Dr. Bennett said the Agency had completed Dr. Shen's functional statement. Dr. Bennett read the qualifications for the position verbatim from the functional statement. Dr. Bennett did not provide any other explanation for the position.

9

51.     After Dr. Bennett read Dr. Shen her position's functional statement, Dr. Shen replied that she did not currently perform some of the duties listed in the statement. Dr. Shen cited "3/e reviews" of completed examinations and "7/c reviews" of data entry. In response, Dr. Bennett revised the functional statement to produce the final version.

52.     At the end of the October 23, 2013, meeting with Dr. Bennett and Perry, Dr. Shen asked what type of position she had in the C&P Department and what credentials she had to perform her work. Dr. Bennett replied that she would meet with Fierer to find out the answers to Dr. Shen's questions.

53.     The final version of the functional statement for Dr. Shen's position as C&P Physician Reviewer stated that she was responsible for: oversight of, and direction for, all C&P CAPRI exam reviews; timely, accurate review and coordination of exams as requested; reviewing the type of examination, and/or special request and suggests required action; evaluating documents, *e.g.*, requests for examination to ensure proper selection of examination requests as well as ancillary workups; coordinating incoming data from a variety of sources; and reviewing requested completed form 2507 estimations for omissions and inconsistencies, and ensuring they are accurate and complete. The functional statement required her to review data and make assessments regarding the form 2507 review process.

54.     Performing the duties identified in the registered clinician quality reviewer functional statement would require access to patient information.

55.     Dr. Shen's functional statement required her to maintain the confidentiality of patient information and treat all patients with respect.

**Dr. Shen's Work is Consistent with Her Training, Instruction, and Functional Statement**

56.      While C&P Physician Reviewer, Dr. Shen only performed the duties Dr. Gardener told her to do, in the manner Dr. Gardener instructed. Dr. Gardener told Dr. Shen that Dr. Efobi had assigned Dr. Shen these duties.

57.      Dr. Gardener often assigned Dr. Shen to work on form 2507 requests that could already have acceptable clinical evidence. When dealing with a form 2507 request that could already have acceptable clinical evidence, Dr. Shen gathered information she believed to be relevant to whether the VAMC in fact possessed acceptable clinical evidence. Dr. Shen then presented the information she had gathered to Dr. Gardener to facilitate Dr. Gardener's completion of process. To Dr. Shen's knowledge and belief, Dr. Gardener uniformly exercised her independent clinical judgment in reviewing the request, Dr. Shen's work, whether acceptable clinical evidence existed, and what the VAMC's response to the VBA should be. Dr. Gardener uniformly put her own signature on the VAMC's responses.

58.      Dr. Shen did not perform any duties requiring privileges.

59.      Dr. Shen did not perform any duties outside the scope of her functional statement.

60.      During the time Dr. Shen was a C&P Physician Reviewer, neither Dr. Shen's name nor her signature appear on any paperwork required for the VAMC to respond to the VBA's form 2507 requests. Every C&P case bears the signature of a privileged physician.

61.      The work Dr. Shen performed as a C&P Physician Reviewer did not impact patient care.

62.      The C&P Department does not provide any medical treatment or therapy. The C&P Department obtains and provides information for the benefits claims process.

63.      On April 3, 2014, Dr. Bennett sent Dr. Shen an e-mail instructing her not to perform any work related to cases with acceptable clinical evidence. Dr. Shen complied with that order.

11

Before that date, no one had instructed Dr. Shen not to perform duties related to cases with acceptable clinical evidence. To the contrary, Dr. Gardener instructed Dr. Shen of the opposite at Dr. Efobi's request.

64.     No one maintained any log that reflected how Dr. Shen performed clinical duties. Such a log would violate VA policy.

**Dr. Bennett Conducts a Sham Investigation**

65.     In March 2014 or April 2014, Joiner told Dr. Bennett that she had received a report from Dr. Gardener that Dr. Shen was inappropriately performing "ACE exams."

66.     On April 3, 2014, Dr. Bennett met with Dr. Shen and Dr. Gardener separately to investigate Joiner's allegation that Dr. Shen was inappropriately performing "ACE exams."

67.     Perry attended the April 3, 2014 meeting with Dr. Shen and Dr. Bennett. Dr. Bennett told Dr. Shen and Perry that Perry's presence was unwarranted because the meeting's purpose was "not disciplinary," but rather just to ask "a few questions."

68.     During the April 3, 2014 meeting with Dr. Bennett and Perry, Dr. Shen explained that she assisted with form 2507 reviews, including many reviews that could involve acceptable clinical evidence. Dr. Shen noted that she performed her work and submitted it to Dr. Gardener for review and sign off. Dr. Shen clarified that she did not directly perform any work under Dr. Gardener's name or signature. At no point during the meeting did Dr. Shen admit to performing "ACE exams" or to performing any other duty requiring clinical privileges.

69.     During the April 3, 2014 meeting with Dr. Bennett, Dr. Gardener explained to Dr. Bennett in detail that Dr. Shen did not perform for her any duties requiring privileges. During the meeting, Dr. Gardener repeatedly stated that the duties Dr. Shen performed were not clinical. Dr. Gardener told Dr. Bennett to the effect of, "Dr. Shen's 'medical opinion' amounts to data

collection and literature searches pertaining to what she thinks may be relevant to the claimed condition; 'the decision' to use or not use the information rests with me." Dr. Gardener added, "I review her work and sign off on it. I make the decisions she only gives an opinion."

70.     Dr. Bennett asked Joiner to review all form 2507 requests that involved acceptable clinical evidence during the relevant period for evidence that Dr. Shen had acted inappropriately. Joiner's review of the cases revealed no evidence of misconduct.

**Dr. Bennett Proposes to Terminate Dr. Shen in Consultation with Mr. Fierer**

71.     Dr. Bennett discussed the allegations that Dr. Shen had performed "ACE exams" with Fierer. Fierer contributed to and approved of the decision to propose Dr. Shen's termination.

72.     On June 23, 2014, Dr. Bennett delivered to Dr. Shen a notice proposing to terminate her employment. The proposal raised a single charge that Dr. Shen performed "ACE Clinical Reviews without Clinical Privileges." The charge was supported by a single specification:

> "Beginning in or about October 2013 you [Dr. Shen] have performed Acceptable Clinical Evidence (ACE) clinical review examinations for the Compensation and Pension Clinic. This is a patient-related duty that is assigned to a credentialed and privileged physician. You lack privileges at this facility and performing ACE clinical review examinations is outside the scope of your functional statement."

73.     Dr. Bennett officially supported her proposal to terminate Dr. Shen's employment with various policies and three pieces of evidence: 1) Dr. Shen's functional statement; 2) Joiner's report of contact; and 3) a memorandum written by Dr. Bennett.

**Dr. Shen Once Again Initiates the EEO Process**

74.     On August 5, 2014, Dr. Shen's representative made contact with an EEO counselor employed by Defendant to initiate the informal EEO process on Dr. Shen's behalf based on the proposed termination and deliberate idling.

75.     From August 5, 2014, to September 3, 2014, Dr. Shen participated in informal counseling.

76.     On September 3, 2014, Defendant's EEO office issued Dr. Shen a notice of right to file a formal complaint.

77.     On September 18, 2014, Dr. Shen filed a formal complaint with Defendant. After correspondence between Dr. Shen's representative and Defendant's EEO representative, Defendant accepted Dr. Shen's claims for investigation by letter dated November 7, 2014. Defendant retained an outside firm, which conducted an investigation into Dr. Shen's allegations.

78.     As of March 25, 2015, Defendant had not completed its investigation. That day, Dr. Shen filed a request for a hearing before an administrative judge with the EEOC.

79.     As of the date of filing this complaint, the EEOC has not issued an acknowledgment order, and the Dr. Shen's administrative complaint was pending before the EEOC's administrative hearing process. Defendant has not taken final action on Dr. Shen's complaint.

**The VAMC's Director Offers to Mitigate the Termination Action if Dr. Shen Drops her EEO Complaint**

80.     In August 2014, Defendant issued Dr. Shen a letter signed by VAMC Director Timothy Cooke ("Cooke") sustaining the charge against Dr. Shen but offering her a "last chance agreement." The agreement would have required Dr. Shen to admit to the charge, but she could have avoided the termination of her employment. However, Defendant conditioned the offer to

14

mitigate explicitly on Dr. Shen's agreement to stop participating in the EEO process. Dr. Shen did not accept the last chance agreement.

**The VAMC Terminates Dr. Shen's Employment**

81.     On September 11, 2014, Cooke issued Dr. Shen a letter notifying her that Defendant was terminating her employment, effective immediately, based on Dr. Bennett's proposal. The letter stated that Cooke had determined that Dr. Shen had engaged in the misconduct charged. Further, the letter designated the matter an issue of clinical competence or judgment, which would require Defendant to report to the termination to the National Practitioners Database and applicable state licensing boards. The letter advised Dr. Shen that she had to appeal the decision to Cooke's Disciplinary Appeals Board.

82.     Cooke relied on advice from Dr. Bennett and Fierer in determining the appropriate standards to apply and determining that Dr. Shen had performed duties that required privileges.

83.     Dr. Shen filed an appeal with the Disciplinary Appeals Board. However, the Disciplinary Appeals Board refused to assume jurisdiction because the matter did not involve a matter of clinical competence or judgment.

84.     Dr. Shen filed an application for retirement within 30 days of the effective date of her termination. Initially, the VAMC (via Employee Labor Relations Manager Rodger Withrow) refused to process Dr. Shen's application after her termination on the basis that Dr. Shen was a former employee. The VAMC reiterated its refusal after Dr. Shen's representative clarified the VAMC's obligation to process Dr. Shen's timely retirement application. After Dr. Shen filed her EEO complaint citing the VAMC's refusal to process her retirement application, the VAMC submitted Dr. Shen's application on October 16, 2014.

## COUNT I – WRONGFUL TERMINATION IN VIOLATION OF 42 U.S.C. § 2000e-16

85. Dr. Shen incorporates the foregoing paragraphs as if fully alleged herein.

86. Defendant violated Title VII when it terminated Dr. Shen's employment on September 11, 2014.

87. Dr. Shen engaged in protected activity by participating in the EEO process.

88. Dr. Shen participated in the EEO complaint process for the first time from August 2009 until April 2013.

89. Dr. Shen engaged in the EEO process by filing and prosecuting a breach allegation against the agency from August 22, 2013, to June 10, 2014.

90. Dr. Shen engaged in the EEO complaint process for the second time from August 5, 2014, to the present.

91. On or before April 3, 2014, Dr. Bennett knew that Dr. Shen had engaged in the EEO process.

92. On or before April 1, 2013, Fierer knew that Dr. Shen had engaged in the EEO process.

93. On or before he made his decision to terminate Dr. Shen's employment, Cooke knew that Dr. Shen had engaged in the EEO process.

94. Dr. Bennett and Fierer collectively contributed to the decision to terminate Dr. Shen's employment.

95. Fierer has contributed to attempts to terminate Dr. Shen's employment multiple times beginning four months after she first made EEO contact in August 2009.

96. Fierer proposed to terminate Dr. Shen's employment because she engaged in the EEO process.

97. Dr. Bennett proposed to terminate Dr. Shen's employment because Dr. Shen engaged in the EEO process.

98. Cooke terminated Dr. Shen's employment because Dr. Shen engaged in the EEO process.

99. Fierer influenced and contributed to the decision to terminate Dr. Shen.

100.     Dr. Bennett influenced and contributed to the decision to terminate Dr. Shen.

101.     Fierer took the first available opportunity to retaliate against Dr. Shen.

102.     Fierer had personal motive to retaliate against Dr. Shen because he was accused of misconduct in Dr. Shen's first EEO complaint.

103.     Dr. Bennett had personal motive to retaliate against Dr. Shen because he was accused of misconduct in Dr. Shen's allegation of breach.

104.     Defendant proposed Dr. Shen's termination just two days after it received notice that the EEOC had stopped monitoring Defendant for compliance with the EEOC's corrective action order.

105.     Defendant's stated reasons for terminating Dr. Shen's termination is not credible and pretext for retaliation.

106.     Dr. Shen received no notice that what she was doing was considered inappropriate before she was terminated. To the contrary, Dr. Shen was told explicitly to perform the duties she was allegedly being terminated for, and she told Cooke, as much.

107.     Defendant conditioned Dr. Shen's continued employment on her agreement to stop participating in the EEO process. This condition was not made as an offer of settlement. Rather, Defendant stated this condition as part of the disciplinary process.

## COUNT II – DELIBERATE IDLING IN VIOLATION OF 42 U.S.C. § 2000e-16

108.     Dr. Shen incorporates the foregoing paragraphs as if fully alleged herein.

109.     Dr. Shen engaged in protected activity by participating in the EEO process.

110.     Dr. Shen participated in the EEO complaint process for the first time from August 2009 until April 2013.

111.     Dr. Shen engaged in the EEO process by filing and prosecuting a breach allegation against the agency from August 22, 2013, to June 10, 2014.

112.     Dr. Shen engaged in the EEO complaint process for the second time from August 5, 2014, to the present.

113.     During the relevant period, Dr. Bennett knew that Dr. Shen had engaged in the EEO process.

114.     During the relevant period, Dr. Efobi knew that Dr. Shen had engaged in the EEO process.

115.     On or before April 1, 2013, Fierer knew that Dr. Shen had engaged in the EEO process.

116.     Defendant inflicted an adverse action on Dr. Shen each and every work day from May 1 2013 to September 11, 2014, when Defendant caused Dr. Shen to be deliberately idle.

117.     Defendant did not issue Dr. Shen a position description for the C&P Physician Reviewer position.

118.     Defendant did not issue Dr. Shen a functional statement for the C&P Physician Reviewer position until October 23, 2013, almost six months after being reassigned to the position.

18

119.     Defendant did not issue an accurate SF-50 reflecting Dr. Shen's reassignment as a C&P Physician Reviewer.

120.     Defendant omitted Dr. Shen from the C&P Department organizational chart while she was C&P Physician Reviewer.

121.     Defendant did not assign Dr. Shen a first-line supervisor to supervise or direct Dr. Shen.

122.     Defendant did not assign Dr. Shen to actually perform any work. The only duty assigned to Dr. Shen came from Dr. Gardener, and Defendant ostensibly terminated Dr. Shen for performing those duties. Even considering those duties, Dr. Shen had on average only two hours of work to perform per work day.

123.     Dr. Shen's lack of work and prior EEO activity were the subjects of rumors and gossip among Dr. Shen's co-workers in the C&P Department.

124.     Dr. Shen's lack of work caused Dr. Shen to be ostracized and disliked by her co-workers in the C&P Department.

125.     Collectively, Defendant's refusal to assign Dr. Shen the duties or status commensurate with her position was materially adverse because an objectively reasonable employee in Dr. Shen's position could very well be dissuaded from engaging in protected activity were the actions taken in retaliation for that protected activity.

126.     Defendant caused Dr. Shen to be deliberately idle because of her protected activity.

127.     Defendant's stated reasons for causing Dr. Shen to be deliberately idle are pretext for retaliation. The C&P Department's duties include numerous administrative tasks that do not require privileges. During the relevant period, the C&P Department was understaffed. The C&P

Department had a backlog of more 60,000 claims. While Dr. Shen was a C&P Physician reviewer, the VAMC continued to hire administrative staff.

**COUNT III – HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF 42 U.S.C. § 2000e-16**

128.     Dr. Shen incorporates the foregoing paragraphs as if fully alleged herein.

129.     Defendant violated Title VII when it subjected Dr. Shen to a hostile work environment from April 2013 to September 11, 2014.

130.     Defendant subjected Dr. Shen to unwanted treatment and harassment.

131.     Defendant caused Dr. Shen to be deliberately idle for the duration of the 17 months that she worked as a C&P Physician Reviewer.

132.     Defendant proposed to terminate Dr. Shen's employment.

133.     Defendant inflicted these actions on Dr. Shen because she engaged in the EEO process.

134.     The harassment Defendant subjected Dr. Shen created a subjectively abusive work environment for Dr. Shen.

135.     The harassment Defendant subjected Dr. Shen created an objectively abusive work environment for Dr. Shen.

136.     Defendant should be held liable because Dr. Shen's harassers were her supervisors.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

- Backpay with interest;

- Reinstatement to the same position, duties, and status Plaintiff would have had but for the retaliation, or front pay in lieu of reinstatement;

20

- Compensatory damages for emotional distress and reputational harm;

- Reasonable attorneys' fees, costs and expenses;

- Injunctive relief to prevent future violations; and

- Whatever other relief the Court may find just and equitable.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all claims for which there is a right to jury trial.


Dated: January 4, 2016


_____/s/_____
David M. Hammer, Esq.
WV Bar ID #5047
Hammer, Ferretti & Schiavoni
408 West King Street
Martinsburg, WV 25401
Tel:     (304) 264-8505
Fax:     (304) 264-8506
dhammer@hfslawyers.com

*Counsel for Plaintiff*