# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**NING SHEN**,

    **Plaintiff**,

v.                                     **CIVIL ACTION NO.: 3:16-CV-1 (GROH)**

**ROBERT A. MCDONALD, Secretary,**
**U.S. DEPARTMENT OF VETERANS AFFAIRS**,

    **Defendant**.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Currently before the Court are the Defendant's Motion for Summary Judgment [ECF No. 29] and the Plaintiff's Motion for Partial Summary Judgement [ECF No. 30], both filed on March 31, 2017. Thereafter, both parties filed responses [ECF Nos. 32 & 33] and replies [ECF Nos. 35 & 36].

## I. INTRODUCTION

Doctor Ning Shen ("Dr. Shen") brings this action against the Department of Veterans Affairs ("VA") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Specifically, in her amended four-count complaint, Dr. Shen alleges wrongful termination; deliberate idling; hostile work environment and breach of settlement agreement. The United States Department of Veterans Affairs ("Defendant"), argues that Dr. Shen was terminated for doing clinical work without privileges. The Defendant further argues that

Dr. Shen's other claims are also without merit, and therefore, it is entitled to summary judgment as a matter of law.

## II. BACKGROUND

Early in 2008, Dr. Shen became a full-time employee at the Veterans Administration Medical Center ("VAMC") located in Martinsburg, West Virginia. In 2009, she began pursuing an equal employment opportunity ("EEO") complaint against the VAMC. The 2009 EEO claim resulted in Dr. Shen and the VAMC entering into a settlement agreement before an administrative law judge on April 17, 2013. The agreement provided that Dr. Shen would be reassigned to the compensation and pension ("C&P") department of the VAMC to work as a C&P physician reviewer—a new, unique position created specifically for Dr. Shen as a result of the settlement. The agreement further specified that Dr. Shen's new position "grants [her] credentials as a physician at the VA Medical Center in Martinsburg, West Virginia, but not privileges." ECF No. 29-24 at 7; see also ECF No. 30-1 at 3. The agreement also stipulated that "[a]s a physician, [Dr. Shen] will have $1,000 education pay annually." ECF No. 29-24 at 7.

On August 22, 2013, Dr. Shen alleged that the settlement agreement was not enforceable, and in the event it was enforceable, the VA had breached it. The VA's Office of Resolution Management issued a final agency decision on October 30, 2013, finding that the agreement was enforceable and "that the agency has complied with all of the terms contained" therein. ECF No. 29-27 at 7. Dr. Shen timely appealed the decision to the Equal Employment Opportunity Commission ("EEOC"). The EEOC found that "the crux of [Dr. Shen's] claim of breach is her dissatisfaction with the position she agreed to in the settlement agreement while she was represented by [an] Attorney." ECF No. 29-

28 at 4. On April 9, 2014, the EEOC concluded that the VA did not breach the settlement agreement. Id. at 4–5.

Before the EEOC's decision, Dr. Shen's direct supervisor, Deborah Bennett, D.O., authored a memorandum memorializing conversations with Dr. Shen and Dr. Veronice Gardner regarding whether Dr. Shen was performing Acceptable Clinical Evidence ("ACE") "exams."[1] The essence of Dr. Bennett's April 3, 2014 memorandum is that both doctors told Dr. Bennett that Dr. Shen was performing ACE reviews that Dr. Gardner would then review and sign. See ECF No. 29-29.

On June 23, 2014, Dr. Shen received a proposed discharge letter, signed by her supervisor, Dr. Bennett. The letter charged Dr. Shen with "performing ACE clinical reviews without clinical privileges." See ECF Nos. 29-30; 30-22. The letter further specified, "[b]eginning in or about October 2013 you have performed Acceptable Clinical Evidence (ACE) clinical review examinations for the Compensation and Pension Clinic. This is a patient-related duty that is assigned to a credentialed and privileged physician. You lack privileges at this facility and performing ACE clinical review examinations is outside of the scope of your functional statement." On July 7, 2014, Dr. Shen, by counsel, replied to the proposed discharge letter in writing. ECF No. 30-19.

On August 5, 2014, Dr. Shen contacted the VA's ORM for equal employment opportunity ("EEO") counseling. See ECF No. 30-21. The VA ORM informed the VAMC's Director, Timothy Cooke, of Dr. Shen's EEO counseling by email sent on August 15, 2014. Id. On August 19, 2014, Mr. Cooke issued Dr. Shen a last chance agreement ("LCA"). ECF No. 30-22. The LCA explained that Mr. Cooke determined the misconduct charged

---

[1] The evidence in this case is clear that "exam" is a misnomer; given the actual work performed, review is a more appropriate term.

3

in the proposed termination letter should be sustained. Further, he explained termination is the appropriate traditional penalty for the sustained charge. However, Mr. Cooke offered Dr. Shen a chance to avoid termination, if she agreed to the terms contained within the LCA. Specifically, the VAMC and Dr. Shen would agree that Dr. Shen admitted to the sustained charge; the traditional discipline would be removal; Dr. Shen would voluntarily withdraw all complaints, grievances, and other causes of action against the VA; the LCA would stay in Dr. Shen's personnel folder for two years; Dr. Shen would serve a thirty-day suspension; any future misconduct by Dr. Shen within the two-year period could result in her termination and Dr. Shen understood and voluntarily agreed to the LCA. Id. Dr. Shen declined to accept the LCA.

By letter dated September 9, 2014, Mr. Cooke informed Dr. Shen that she was being discharged from federal employment effective September 11, 2014, which was the same date Dr. Shen signed and received the letter. ECF No. 30-18.

On September 18, 2014, Dr. Shen filed a second formal EEO complaint with the Department of Veterans Affairs Office of Resolution Management; however, a final agency decision never issued because Dr. Shen filed the instant action on January 4, 2016. ECF No. 29-31 at 3; ECF No. 1.

### III. STANDARDS OF REVIEW

Pursuant to Rule 56, summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the

4

Court must conduct "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 323–35; Anderson, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quotations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

"A plaintiff lacking direct evidence of retaliation may utilize the McDonnell Douglas Corp v. Green, 411 U.S. 792 . . . (1973), framework to prove a claim of retaliation. Price v. Thompson, 380 F.3d 209 (4th Cir. 2004) (citing Williams v. Cerebronics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)). To avoid summary judgment under the McDonnell Douglas framework, a Title VII plaintiff "after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." Diamond v. Colonial Life and

Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005) (quoting Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).

"The McDonnell Douglas framework is a three-step burden-shifting framework used by Title VII plaintiffs who lack direct evidence of retaliatory discrimination." Foster v. University of Maryland-Eastern Shore, 787 F.3d 243, 250 (4th Cir. 2015) (citing Diamond, 416 F.3d at 318). To prevail under McDonnell Douglas, a plaintiff "must first establish a prima facie case by showing: (i) that [she] engaged in protected activity, (ii) that [her employer] took adverse action against [her], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." Foster, 787 F.3d at 250 (internal quotation marks omitted) (quoting Price v. Thompson, 380 F.3d 209, 212); see also King v. Rumsfeld, 328 F.3d 145, 150–51 (4th Cir.), cert. denied, 540 U.S. 1073 (2003). However, "once an employer rebuts the prima facie case with a legitimate, nondiscriminatory reason for the employment action, 'the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Diamond, 416 F.3d at 318 (alterations in original) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142–43 (2000)).

Upon satisfying the first two prongs of the McDonnell Douglas framework, the inquiry focuses on causation. Specifically, a plaintiff must show that a causal relationship existed between the protected activity and the adverse employment action. Id. Further, a plaintiff "must establish causation at two different stages of the McDonnell Douglas framework: first, in making a prima facie case, and second, in proving pretext and satisfying her ultimate burden of persuasion." Foster, 787 F.3d at 250.

In Foster, the Fourth Circuit considered how the Supreme Court of the United States' decision in Nassar impacted the causation requirements under McDonnell Douglas. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517 (2013). In Nassar, the Supreme Court concluded that "Title VII retaliation claims must be proved according to traditional principles of but-for causation[, which require] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." 133 S.Ct. at 2533.

Upon examining the Supreme Court's analysis in Nassar, the Foster Court declined to "apply a heightened 'but-for' standard to the causation prong of a prima facie case of retaliation." Mohammed v. Central Driving Mini Storage, Inc., 128 F. Supp. 3d 932 (4th Cir. 2015) (citing Foster, 787 F.3d at 250–51). The Foster Court reasoned that if the Supreme Court "intended to retire McDonnell Douglas and set aside 40 years of precedent, it would have spoken plainly and clearly to that effect." 787 F.3d at 251. Accordingly, the Fourth Circuit holds "that Nassar does not alter the causation prong of a prima facie case of retaliation." 787 F.3d at 251. Therefore, it remains that "the burden for establishing causation at the prima facie stage is 'less onerous.'" Id. (quoting Williams, 871 F.2d at 457).

"Generally speaking, *temporal evidence alone* cannot establish causation for a prima facie case of retaliation, unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" Shields v. Fed. Express Corp., 120 F. App'x 956 (4th Cir. 2005) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (finding district court's summary judgment order in favor of employer appropriate where plaintiff failed to establish any

7

causal connection); see also Lyons v. Shinseki, 454 F. App'x 181 (4th Cir. 2011). Indeed, "a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee *shortly after* learning of the protected activity." Price, 380 F.3d at 213 (emphasis added).

Once a plaintiff establishes a prima facie case of retaliation, she "bears the ultimate burden of persuading the court that [she] has been the victim of intentional [retaliation]." Foster, 787 F.3d 243, 252 (quoting Hill, 354 F.3d at 285). Thus, to carry her burden, "a plaintiff must establish 'both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct.'" Id. (alterations in original) (quoting Jiminez v. Mary Washington College, 57 F.3d 369, 378 (4th Cir. 1995). McDonnell Douglas "has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action[,]" and Nassar has not altered how a retaliation claim is adjudicated under McDonnell Douglas. 787 F.3d at 252.

### IV. CONTENTIONS OF THE PARTIES

In her motion for partial summary judgment, Dr. Shen avers that she is entitled to judgment as a matter of law as to count one of her amended complaint. In the alternative, the Plaintiff argues that this Court should find she has established a prima facie case of retaliation. Conversely, the Defendant filed a motion for summary judgment, contending that all four of the Plaintiff's claims necessarily fail as a matter of law. Both parties' arguments are outlined below.

**a. Dr. Shen's Motion for Partial Summary Judgment**

According to Dr. Shen, this "Court should grant partial summary judgment because the undisputed facts establish that (1) Dr. Shen engaged in protected activity, (2) Dr. Shen

8

suffered an adverse action, (3) the evidence raises an inference of unlawful causation, and (4) no reasonable person could conclude that the charge stated in the June 23, 2014 proposed termination was the actual reason Mr. Cooke terminated Dr. Shen's employment." ECF No. 30-1 at 17.

Dr. Shen asserts it is uncontroverted she engaged in protected activity and suffered a materially adverse action. Turning then to causation, Dr. Shen argues it is established by the "very close temporal proximity" between when Mr. Cooke learned of her protected activity and when he decided to terminate her employment and his "knowing violation of his duty to ensure the termination was not motivated by retaliatory animus." Id. at 18.

Moreover, Dr. Shen argues that no reasonable person could believe that Mr. Cooke terminated her because she performed ACE reviews without privileges. Specifically, Dr. Shen claims that she did not perform any duty that required privileges, and regardless, none of the evidence Mr. Cooke considered in making the termination decision indicated that Dr. Shen had performed any function requiring privileges.

In response to Dr. Shen's motion for partial summary judgment, the Defendant contends that causation has not been established because the VAMC issued her proposed removal prior to the EEO activity she claims was the cause for retaliation. The Defendant also asserts that Mr. Cooke upheld his duty to ensure Dr. Shen's termination was not retaliatory, and a reasonable jury could find that Dr. Shen was terminated for conducting ACE reviews without privileges.

Dr. Shen first notes that the Defendant does not dispute that she satisfied the first two prongs in making a prima facie case, and then, Dr. Shen argues that the Defendant

has failed to raise a genuine dispute of material fact regarding causation. Specifically, she avers that "the undisputed facts still show" very close temporal proximity, Mr. Cooke breached his duty to Dr. Shen and no reasonable jury could believe that Mr. Cooke terminated Dr. Shen based on the allegations charged against her.

**b. The Defendant's Motion for Summary Judgment**

In its motion for summary judgment, the Defendant argues that all four of Dr. Shen's claims are without merit: Dr. Shen's (1) retaliatory termination claim fails because she cannot establish that her EEO activity was the but-for cause of her termination; (2) deliberate idling claim fails because she agreed to accept her position as a term of her settlement agreement and the Defendant, or anyone else for that matter, had no control over the amount of work available to her each day; (3) retaliatory hostile work environment claim fails because the conduct she alleges does not meet the standard of being severe and pervasive; and (4) breach of settlement agreement claim fails because this Court lacks subject matter jurisdiction, as this argument has not been administratively exhausted, and, in the alternative, the VAMC has not breached the agreement.

Elaborating on the first claim, the Defendant concedes that Dr. Shen engaged in protected EEO activity, beginning in August 2009, and that her termination meets the definition of an adverse action. However, the Defendant argues that "Plaintiff cannot establish that her EEO activity was a but-for cause of her termination." ECF No. 29-1 at 10. The Defendant acknowledges that Dr. Shen can offer temporal proximity to support a prima facie case of retaliation, but insists that no such temporal proximity exists in this case. Further, the Defendant avers that the VAMC had a legitimate nondiscriminatory

basis for Dr. Shen's termination. Namely, that she admitted she was providing ACE clinical reviews without the required privileges.

As to Dr. Shen's deliberate idling claim, the Defendant asserts that neither the VAMC nor any person "had any control over how many 2507[ forms] were laying on the fax machine each day."[2] ECF No. 29-1 at 13. Accordingly, the amount of work available to Dr. Shen would vary from day to day, and the VAMC acknowledges that she "did not have a lot of work to do." Id. However, this was the first time the VAMC had to find work for a physician who lacked privileges. Regardless, Dr. Shen entered into a settlement agreement specifying that she would not have privileges, she would take on this new role and continue to receive a physician's salary.

Next, the Defendant states that the retaliatory hostile work environment claim must fail because the conduct Dr. Shen claims created a hostile work environment falls short of being severe and persuasive. Further, the Defendant contends that none of the actions or conditions cited by Dr. Shen were physically threatening, humiliating or frequent.

Finally, the Defendant argues that this Court lacks subject matter jurisdiction to consider Dr. Shen's fourth claim—that the VAMC breached the settlement agreement—because Dr. Shen has not yet exhausted her administrative remedies. Specifically, the Defendant contends that Dr. Shen failed to include this count in any of the administrative proceedings during her second EEO case. Alternatively, the Defendant asserts that this Court should still dismiss count four because the VAMC did not breach the settlement agreement.

---

[2] Dr. Shen's job at the VAMC was to review 2507 forms, determine how much time was needed for various exams, and provide that information to the clerks who scheduled the exams. See ECF No. 30-1 at 5.

At the outset of her response, Dr. Shen notes that causation is the only issue in dispute regarding her wrongful termination claim. She argues that a prima facie case of retaliatory discrimination has been established solely by the "very close temporal proximity between Mr. Cooke's knowledge of Dr. Shen's EEO activity and his decision to sustain the charges." ECF No. 33 at 20. For the first time, Dr. Shen advances causation under <u>Staub</u>. <u>See</u> <u>Staub v. Proctor</u>, 562 U.S. 411 (2011). Namely, Dr. Fierer had a retaliatory motive, and he influenced Mr. Cooke's decision. Additionally, or alternatively, Dr. Shen avers that management at the VAMC violated various policies, which also establishes a prima facie case of retaliatory discrimination.

Responding to the Defendant's arguments regarding the deliberate idling claim, Dr. Shen contends that the settlement agreement permitted the VAMC to assign her more than one clerical task; however, the VAMC chose to assign her only one task.

As to the breach of settlement agreement claim, Dr. Shen avers that this Court has jurisdiction. Specifically, Dr. Shen contends that she appropriately followed the statutorily proscribed procedure, and her claim is properly before this Court. Moreover, she claims the VAMC breached the agreement by failing to place her in a physician's position, pay her $1,000 in education pay and provide her credentials as a physician.

Finally, Dr. Shen argues that genuine issues of material fact exist concerning her hostile work environment claim. Based upon the lack of work provided to her, office gossip, being omitted from an organizational statement and being told she was not a doctor, Dr. Shen asserts that a jury could find she was subjected to humiliating and pervasive treatment, which created a hostile work environment.

In its reply, the Defendant only addressed Dr. Shen's argument that the VAMC breached the settlement agreement between the parties. The Defendant avers that it has complied with the terms of the settlement agreement, and Dr. Shen is simply "mincing words." ECF No. 36 at 2.

**V. DISCUSSION**

The first issue before the Court is whether Dr. Shen has adequately presented a prima facie case of retaliatory discrimination. To establish her prima facie case, Dr. Shen must satisfy the three-prong test laid out in McDonnell Douglas. Specifically, Dr. Shen must establish that she engaged in protected activity, her employer took adverse action against her and a causal relationship existed between the protected activity and the adverse employment action. Here, both parties acknowledge that the first two prongs have been satisfied, and upon a review of the record, this Court finds that Dr. Shen did engage in protected activity and the VAMC took adverse action against her.

The sole issue before this Court regarding Dr. Shen's retaliation claim is whether causation exists.[3] The parties generally agree on the timeline of events and the facts surrounding Dr. Shen's EEO activity and termination; however, they disagree on what time period the Court should consider in determining whether temporal proximity gives rise to causation. Dr. Shen urges the Court to consider the period between when Mr. Cooke received an email from the VA's ORM and when he gave Dr. Shen the LCA—one

---

[3] To be clear, the Defendant incorrectly states Dr. Shen's burden for establishing a prima facie case of causation. Specifically, the Defendant argues, "Plaintiff cannot establish that her EEO activity was a 'but-for' cause of her termination, that 'but-or' her protected activity she would not have been removed from employment. She thus fails to meet her burden of establishing a causal connection between her termination and her EEO activity. Without the requisite causal connection she fails to establish a prima facie case of retaliatory termination." ECF No. 29-1 at 10. As explained more fully above, the Fourth Circuit explicitly rejected applying the but for standard at the prima facie phase. See Foster v. University of Maryland-Eastern Shore, 787 F.3d 243 (4th Cir. 2015); Section III supra.

13

day.  Conversely, the Defendant, without giving a specific timeframe, argues that the Court should determine that the period is insufficient to find very close temporal proximity because one of Dr. Shen's EEO complaints had been filed five years prior and the second complaint had yet to be filed when the proposed termination letter issued.  See ECF Nos. 29-1 at 11; 32 at 10.

Given the history of Dr. Shen's EEO activity and the VAMC's procedures for terminating an employee, determining the appropriate dates from which to ascertain the correct period for this Court to consider hardly presents a clear calculation.  Indeed, the relevant period to the Court's inquiry could conceivably be calculated different ways.  However, the Supreme Court's decision in Breeden is instructive in this instance.

The Breeden Court explained that the court of appeals relied upon two facts when it reversed the district court's summary judgment award in favor the employer.  532 U.S. 268, 272 (2001).  One of those facts was that the adverse action "occurred one month after [her supervisor] learned of [the] suit.  Id. (citation omitted).  However, that "fact is immaterial in light of the fact that [her employer] concededly was contemplating the [adverse action] before it learned of the suit."  Id.  To be clear, "proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatever of causality."  Id.

Here, the VAMC, by Dr. Bennett's letter, proposed Dr. Shen's termination on June 19, 2014, for conducting ACE clinical reviews without clinical privileges.  Mr. Cooke's decision to issue the LCA and ultimately to terminate Dr. Shen proceeded along lines previously contemplated, though not yet definitively determined, which is no evidence

14

whatever of causality. Accordingly, this Court finds that Dr. Shen has failed to establish causation by temporal proximity alone.

Dr. Shen argues that policy violations committed by management at the VAMC also establish causation. Specifically, Dr. Shen contends that Mr. Cooke participated as both a proposing official and the deciding official, and he failed to investigate whether the proposed termination was retaliatory in nature.

In support of her argument, Dr. Shen cites Martin v. Mecklenburg County, 151 F. App'x 275 (4th Cir. 2005), an unpublished case, in which the Fourth Circuit considered cross appeals after a jury found in favor of a plaintiff-employee's Title VII retaliation claim. It is under this procedural posture that the Martin Court stated, "[a] decisionmaker's inconsistent action in violation of well-established policy, rendered at the first opportunity after becoming aware of protected conduct, provides sufficient evidence for a reasonable jury to conclude at the very least that some consideration of this protected conduct played a role in the contested employment decision." Id. at 281.

Not only was the procedural posture of Martin significantly different than the case *sub judice*, but also the "decisionmaker's inconsistent action in violation of well-established policy" in Martin was reversing an employee review panel's decision not to terminate the employee even though the employer's policies provided that the panel's decisions would be final and binding. See Id. at 278. Further, it is well established in this circuit that unpublished decisions are not binding precedent. Rather, such opinions are "entitled only the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining, Co., 468 F.3d 213, 219 (4th Cir. 2006) (quoting Hupman v. Cook, 640 F.2d 497, 501 n.7 (4th Cir. 1981)).

15

The Court finds that any policy Mr. Cooke allegedly may have violated does not rise to the level of creating a prima facie case of causation. In his affidavit and deposition, Mr. Cooke testified that he consulted human resources regarding the proposal and ultimate decision to terminate, which were also authored by human resources, and he did not consider Dr. Shen's prior EEO activity at any time as part of his decision to terminate her employment. See ECF Nos. 32-15 & 33-47.

Thus, Because Dr. Shen's theories of temporal proximity and VA policy violations by Mr. Cooke are insufficient for establishing prima facie causation, Dr. Shen has failed to meet her burden under McDonnell Douglas, and her claim for retaliatory termination fails as a matter of law.

Dr. Shen's next claim is for deliberate idling—that the VAMC intentionally did not provide her with sufficient work. The Defendant "does not dispute that Dr. Shen did not have a lot of work to do." ECF No. 29-1 at 13. However, the Defendant avers that it had no control over the amount of work Dr. Shen received each day. Dr. Shen's position required her to review forms that were faxed to the VAMC in Martinsburg. No one at the C&P department, VAMC or VA had any control over how many forms were received each day.

Moreover, the settlement agreement provided that Dr. Shen's "position includes a workshare or alternative work site at the DC VA Medical Center. [Dr. Shen] will work one day a week to preform research duties." ECF No. 29-24 at 65. Indeed, Dr. Fierer testified that Dr. Shen "was given time to go down to the DC VA to participate in research," but Dr. Fierer believed that Dr. Shen "went once or twice . . . and never followed up again." ECF No. 33-6 at 18. Dr. Shen has not made any claim or argument that the VA precluded her

16

from conducting research at the DC VA, as provided in the settlement agreement, yet she claims deliberate idling.

In short, the position Dr. Shen held is one that she, while represented by an attorney, bargained for and agreed to as part of the settlement agreement with the VAMC, which had no control over the volume of work she would receive any given day. Under the circumstances, the VA had to create a unique position for this situation. The VAMC acted reasonably and without retaliation.

In her third claim, Dr. Shen alleges that she was subjected to a retaliatory hostile workplace. The Defendant rejects Dr. Shen's allegation on the basis that the conduct cited falls below the required legal standard. In response, Dr. Shen contends that she was the subject of office gossip, once told she was not a doctor, omitted from an organizational statement and not assigned enough work.

To adequately establish a hostile work environment claim, Dr. Shen must show that the alleged conduct "1) was unwelcome; 2) resulted because of her gender, disability, or prior protected activity; 3) was sufficiently severe or pervasive to alter the conditions of her employment; and 4) was imputable to her employer." Mullen v. Harvey, No. 3:08-0107, 2010 WL 454489, at *8 (S.D. W. Va. Feb. 2, 2010) (quoting Pueschel v. Peters, 577 F.3d 558, 564–65 (4th Cir. 2009).

Assuming *arguendo* that all of the alleged conduct was unwelcomed by Dr. Shen and that it was a result of her prior protected activity, the Court does not find the allegations Dr. Shen advances are sufficiently severe or pervasive enough to alter the conditions of her employment. Surely, office gossip, a lighter work load, being omitted from an organizational statement and being told she was not a doctor, under the

17

circumstances as presented in the record before this Court, do not rise to the level of sufficiently severe and pervasive as to alter Dr. Shen's conditions of employment.

Indeed, the allegations present infrequent incidents, which are rather mild in nature. Further, there are no allegations of physically threatening or humiliating behavior against Dr. Shen. Finally, it does not appear that any of the conduct alleged ever unreasonably interfered with Dr. Shen's work performance. Dr. Shen's retaliatory hostile work environment claim is without merit.

Finally, Dr. Shen avers that the Defendant breached the settlement agreement reached in her first EEO claim by failing to reassign her to a position with duties to perform and a place in the organizational chart; to place her in a physician's position; failing to provide her credentials; and failing to pay her $1,000 in education pay. As an initial matter, the Court finds that it does have subject matter jurisdiction over this claim because Dr. Shen has exhausted her administrative remedies.

Upon reviewing the EEOC's decision that the VAMC did not breach the settlement agreement, the Court finds its reasoning persuasive. See ECF No. 29-28. Similarly, the Court finds that the EEOC correctly summarized "the crux of [Dr. Shen's] claim of breach" as "her dissatisfaction with the position she agreed to in the settlement agreement while she was represented by [an a]ttorney." Id. at 4. Indeed, as the EEOC concluded, this Court also "cannot find that [Dr. Shen's] subsequent displeasure with the position should constitute breach." Id.

## VI. CONCLUSION

Therefore, it is hereby **ORDERED** that the Defendant's Motion for Summary Judgment [ECF No. 29] is **GRANTED**. Dr. Shen's Motion for Partial Summary Judgment

[ECF No. 30] is **DENIED**, and her complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE**. Accordingly, the Plaintiff's Motion in Limine is **DENIED AS MOOT**. ECF No. 45.

This matter is **ORDERED STRICKEN** from the active docket of this Court. The Clerk of Court is **DIRECTED**, pursuant to Federal Rule of Civil Procedure 58, to enter a separate Order of judgment in favor of the Defendant.

The Clerk is further **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** June 8, 2017

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE